UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RYAN N.,

        Plaintiff,

        v.                                                                                      **DECISION AND ORDER**
                                                                                                  19-CV-287S
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.      Plaintiff Ryan N.[1] challenges the determination of an Administrative Law Judge ("ALJ") that he is no longer disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled since January 11, 2012, due to a number of mental impairments, and that his impairments have continued and not improved, such that he remains unable to work.

        2.      On November 16, 2012, the Commissioner determined that Plaintiff was disabled since January 11, 2012. Plaintiff received Supplemental Security Income ("SSI") benefits and remained in that status until December 8, 2015, when the Commissioner determined, after conducting a continuing disability review ("CDR"), that he had experienced significant medical improvement such that he was no longer disabled as of August 3, 2015. See 20 C.F.R. § 404.1594. After unsuccessfully seeking reconsideration of that determination, Plaintiff proceeded to an ALJ hearing, which took place via videoconference before ALJ Timothy M. McGuan on January 16, 2018. At the time of the hearing, Plaintiff was 24 years old and had a high school education. The ALJ considered

---

[1] In accordance with this district's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order identifies the plaintiff by first name and last initial only.

the case *de novo* and, on March 15, 2018, issued a written decision upholding the Commissioner's determination that Plaintiff was no longer disabled. The Appeals Council thereafter denied review on January 4, 2019.

3. Plaintiff filed the current action on March 5, 2019, challenging the Commissioner's final decision.[2] After filing of the administrative record, the parties cross-moved for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure, with briefing concluded on February 20, 2020. (Docket Nos. 6, 8, 16, 17.) The Clerk of Court thereafter assigned the case here on February 4, 2021, at which time this Court took the motions under advisement without oral argument. (Docket No. 19.) For the following reasons, Plaintiff's motion will be denied and Defendant's motion will be granted.

4. A party is entitled to judgment on the pleadings under Rule 12 (c) "only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted). In social security appeals, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 1383 (c)(3).

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § 1383 (c)(3); Wagner v. Sec'y of Health & Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990). Instead, the court's inquiry is limited to two issues: (1) whether the Commissioner applied the correct legal standards, and (2)

---

[2] The ALJ's March 15, 2019 decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.

2

whether the Commissioner's factual findings are supported by substantial evidence. See Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see also Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). In conducting this inquiry, the court cannot substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Hum. Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). Consequently, if the Commissioner's determination is free from legal error and supported by substantial evidence, the court must affirm. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

6. As it relates to the legal-error inquiry, the court must determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotations and citations omitted). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citation omitted). This inquiry is completed first because "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

7. As it relates to the substantial-evidence inquiry, the standard is not high. See Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). The United States Supreme Court defines substantial evidence as only "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and has clarified that "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154 (quoting Consol. Edison Co. v. NLRB, 305 U.S 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). Because the Commissioner's factual findings are conclusive if supported by substantial evidence, see 42 U.S.C. § 1383 (c)(3), review is properly focused on whether substantial evidence supports the Commissioner's determination, not whether substantial evidence might also support the plaintiff's position. See Zacharopoulos v. Saul, CV 19-5075 (GRB), 2021 WL 235630, at *7 (E.D.N.Y. Jan. 25, 2021) (noting that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*'") (quoting Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)). This is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citing Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999)).

8. "To determine on appeal whether [the Commissioner's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of

4

Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's factual findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  Similarly, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  In short, the substantial-evidence standard requires that once an ALJ finds facts, those facts can be rejected "'only if a reasonable factfinder would *have to conclude otherwise*.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)).

9. An individual is "disabled" under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c (a)(3)(A).  An individual meeting this definition and otherwise qualified is entitled to receive SSI benefits.  Id.

10. But an award of SSI benefits is subject to periodic review.  See 20 C.F.R. § 416.994 (a).  The Commissioner may terminate benefits if it is determined that the impairments upon which the benefits were granted have ceased, do not exist, or are no longer disabling.  See 42 U.S.C. § 1382c (a)(4).  Such a determination must be supported by substantial evidence in the record demonstrating that the individual has experienced medical improvement such that he or she is able to engage in substantial gainful activity. Id.

11. To determine whether an individual continues to be disabled, the Commissioner engages in a 7-step evaluative process. At Step 1, the Commissioner determines whether the individual has an impairment or combination of impairments that meets or equals the severity of an impairment in Appendix 1 of Subpart P of Part 404 of the Social Security Regulations. See 20 C.F.R. § 416.994 (b)(5)(i). If so, the Commissioner will find that the disability continues; if not, the analysis proceeds. See id.

12. At Step 2, the Commissioner determines whether there has been a medical improvement. See 20 C.F.R. § 416.994 (b)(5)(ii). "Medical Improvement" is defined as "any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] disabled or continued to be disabled." 20 C.F.R. § 416.994 (b)(1)(i). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [the individual's] impairment(s)." Id. If the Commissioner finds a medical improvement, the analysis continues to Step 3; if not, the Commissioner will find that there has been no medical improvement and proceed to Step 4.

13. At Step 3, if there has been medical improvement, the Commissioner determines whether the improvement is related to the individual's ability to work, that is, "whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination." 20 C.F.R. § 416.994 (b)(5)(iii). If so, the analysis continues to Step 5; if not, the analysis proceeds to Step 4.

14. At Step 4, with the Commissioner having found either that there has been no medical improvement or that any medical improvement does not relate to the individual's ability to work, the Commissioner determines whether any of the exceptions in 20 C.F.R. § 416.994 (b)(3) or (4) apply. See 20 C.F.R. § 416.994 (b)(5)(iv). If none apply, the Commissioner will find that the disability continues. See id. If an exception in § 416.994 (b)(3) applies, the analysis continues to Step 5. See id. If an exception in § 416.994 (b)(4) applies, the Commissioner will find that the disability has ended. See id.

15. At Step 5, with the Commissioner having found either that a medical improvement relates to the individual's ability to do work or that one of the exceptions in § 416.994 (b)(3) applies, the Commissioner determines whether all of the individual's current impairments in combination are severe. See 20 C.F.R. § 416.994 (b)(5)(v). This determination considers all of the individual's "current impairments and the impact of the combination of [the] impairments on the [individual's] ability to function." Id. If the Commissioner finds that the residual functional capacity assessment from Step 3 shows significant limitation in the individual's ability to perform basic work activities, the analysis continues to Step 6. See id. If the Commissioner finds that the individual's current impairments in combination do not significantly limit his or her ability to perform basic work activities, the Commissioner will find the impairments not severe, and the individual will no longer be considered disabled. See id.

16.     At Step 6, with the Commissioner having found a severe impairment or impairments, the Commissioner determines whether the individual is able to engage in substantial gainful activity.  See 20 C.F.R. § 416.994 (b)(5)(vi).  "That is, [the Commissioner] will assess [the individual's] residual functional capacity based on all . . . current impairments and consider whether [he or she] can still do work [he or she] ha[s] done in the past."  Id.  If the individual can work, the Commissioner will find that the disability has ended.  See id.  If not, the analysis continues to Step 7.

17.     At Step 7, with the Commissioner having found an inability to perform past work, the Commissioner will consider whether the individual can do other work given their residual functional capacity and their age, education, and past work experience. See 20 C.F.R. § 416.994 (b)(5)(vii).  If so, the Commissioner will find that the disability has ended; if not, the Commissioner will find that the disability continues.  See id.

18.     In this case, the ALJ found the following with regard to the 7-step process set forth above: (1) Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, since August 3, 2015 (R. at 17[3]); (2) Plaintiff experienced medical improvement as of August 3, 2015 (R. at 19); (3) Plaintiff, as of August 3, 2015, retained the residual functional capacity to perform a full range of work at all exertional levels but with non-exertional limitations consisting of only simple, routine work, and occasional interaction with the public but no limitation with supervisors or co-workers (R. at 20); (4) Plaintiff's medical improvement is related to his ability to work because it increases his residual functional capacity (R. at 22); (5) Plaintiff's impairments have continued to be

---

[3] Citations to the underlying administrative record are designated as "R."

severe since August 3, 2015 (R. at 22); (6) Plaintiff has no past relevant work (R. at 22); and (7) Plaintiff has the ability to perform a significant number of jobs in the national economy as of August 3, 2015, given his age (younger individual), education (high school), work experience, and residual functional capacity (R. at 23).  Accordingly, the ALJ determined that Plaintiff's disability ended on August 3, 2015, and that Plaintiff had not become disabled again since that date.  (R. at 24.)

19.  Plaintiff offers a single challenge to the ALJ's decision: he maintains that the ALJ failed to properly consider his borderline intellectual functioning as a severe impairment affecting his residual functional capacity.  This Court is not persuaded.  While Plaintiff is correct that the ALJ does not specifically reference his previous borderline intellectual functioning diagnosis, it is apparent from the decision that the ALJ considered the totality of his mental limitations and the affect they might have on his ability to work.  See Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (finding failure to identify a condition at severity step harmless where ALJ considered condition in subsequent steps).

20.  The ALJ was cognitive of and considered Plaintiff's borderline intellectual functioning, as evidenced by his consideration of Listing 12.11 (neurodevelopmental disorders) to assess what he termed Plaintiff's "learning disorder."  (R. at 18.)  The ALJ also considered and credited the consultative evaluation and opinion of Dr. Susan Santarpia, Ph.D., who examined Plaintiff and determined that, as to cognitive functioning, Plaintiff had "average to low average range of ability," an improvement from borderline functioning.  (R. at 21, 22, 333.)  Dr. Santarpia's opinion is consistent with the record evidence, which shows that since his previous disability determination, Plaintiff attended

college (R. at 40), was successfully discharged from mental health treatment (R. at 37), benefitted from medication (R. at 21, 38, 332), displayed coherent thought processes (R. at 332), possessed intact memory skills (R. at 333), could handle his own finances (R. at 334), and had an appropriate fund of knowledge and fair insight and judgment (R. at 333).

21.     Moreover, the ALJ relied on Dr. Santarpia's opinion in determining Plaintiff's residual functional capacity, which includes cognitive-based limitations.  The limitations to simple, routine work, and only occasional interaction with the public are supported by Dr. Santarpia's opinion, which is that Plaintiff is "able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform[ ] complex tasks independently, make appropriate decisions, relate adequately with others, and appropriate deal with stress within normal limits." (R. at 333.)   Dr. Santarpia also concluded that Plaintiff suffered from no mental impairments significant enough to interfere with his ability to function on a daily basis. (R. at 334.)  This evidence thus constitutes substantial evidence supporting the ALJ's decision, and Plaintiff offers no evidence to the contrary or persuasive reason for reversal.

22.     Accordingly, having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds that it is free from legal error and supported by substantial evidence.  It is therefore affirmed. See Grey, 721 F.2d at 46; Marcus, 615 F.2d at 27. Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 16) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   March 18, 2020
         Buffalo, New York

                                              s/William M. Skretny
                                           WILLIAM M. SKRETNY
                                         United States District Judge